[No. 19100. Department One. — March 24, 1893.]

RAMON VEJAR ET AL., APPELLANTS, v. MOUND CITY LAND AND WATER ASSOCIATION ET AL., RESPONDENTS.

MEXICAN GRANTS — DEED OF RANCHO BY NAME. — A rancho made up of several Mexican grants may acquire a name, and pass by a deed under the same.

ID. — ADDITION TO RANCHO SAN JOSÉ — AMBIGUITY OF DESCRIPTION IN DEED — EXTRINSIC EVIDENCE. — It appearing that the original grant of the Rancho San José, after juridical possession thereof was given, was supplemented by another grant of one league in addition thereto, juridical possession of which was given under the name of Azusa, and that in the proceedings for the confirmation for both grants the additional league grant was sometimes called Azusa, but the entire tract was referred to as the Rancho San José, a deed of the "Rancho San José" by name, referring to the confirmation proceedings for further description, is ambiguous, and extrinsic evidence is admissible to show that the entire tract was known as and called the Rancho San José, and that the grantor so understood it.

ID. — CONDUCT OF PARTIES SUBSEQUENT TO DEED. — The conduct of the parties subsequent to the making of a deed is competent, and often very material, evidence in determining, in case of an ambiguity, what was determined to be conveyed.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Shirley C. Ward, A. J. King, Moye Wicks, R. Dunnigan,* and *Anderson, Fitzgerald & Anderson,* for Appellants.

*Chapman & Hendrick, Walter J. Hughes, Wicks & Ward,* and *Houghton, Silent & Campbell,* for Respondents.

PATERSON, J. — The plaintiffs brought this action to partition a tract of land now known as the "Rancho San José Addition," a Mexican grant containing one league of land. The defendant San José Ranch Company has succeeded to all the rights of the Mound City Land and Water Association, and the only contest herein is between it and those claiming under Ricardo Vejar and Ygnacio Palomares.

On April 15, 1837, Alvarado, governor *ad interim* of California, granted to Palomares and Vejar a tract of land known by the name of "San José," and juridical possession thereof was given to them · August 3, 1837. The same tract was, on March 14, 1840, regranted to them and one Luis Arenas, together with a square league of land, in addition to the former grant. This second grant was made in accordance with an arrangement entered into by the three grantees, upon suggestion of the governor, who had promised Palomares and Vejar that if they would admit Arenas into partnership with them, he would give the three an additional league adjoining the San José. In his petition to the prefect, setting forth the understanding above stated, and praying for the additional league promised by the governor, Arenas spoke of the land as " the part called Azusa, in the direction of the Mission San Gabriel." The prefect consulted Palomares and Vejar, and they replied that they had agreed to admit Arenas as a partner in the rancho of San José, in consequence of the recommendation of the governer, by a letter sent to them, " offering for their so doing to grant a league or more of land in *addition* out of the place, *towards the direction called Azusa, in the direction of the mission of San Gabriel, that being the part most proper for said extension.*" Juridical possession of the land was given to the three grantees on May 7, 1840. In 1846 a temporary partition of the lands covered by the two grants was had between the three parties above named. After due proceedings had before the board of land commissioners and the United States district court for the confirmation of the grants, separate patents were issued for each tract of land. By deed dated April 30, 1864, Ricardo Vejar conveyed all his interest in the " Rancho San José " to H. Tischler and I. Schlesinger. The descriptive language of this deed is as follows: " All that certain rancho, tract, and parcel of land situate, lying, and being in the county of Los Angeles, state aforesaid, known, called, and described as the rancho of San José, for a more particular and accurate desription

reference being had to the grant of the same by the Mexican government, the confirmation thereof by the United States land commission, and the district court of the United States for the southern district of California, and the survey of the same by the government of the United States, containing two leagues, be the same more or less." It is claimed by the respondent herein, the San José Ranch Company, that this deed conveyed all of Ricardo Vejar's interest, both in the San José ranch and in the one league additional thereto, now known as the San José Addition. Plaintiffs and other appellants claim, however, that the deed passed only Vejar's interest in the original grant of the Rancho San José, and that the description named in the deed as the " Rancho of San José," when read in the light of the language of the documents referred to in the deed, for " a particular and accurate description," viz., the grant, the confirmation, and the survey, is certain and unambiguous; and that the court below erred in not limiting the introduction of evidence in explanation of the description to the documents referred to in the deed; that the court should not have allowed extraneous evidence to be introduced to show what was intended to be conveyed by the use of the words " Rancho San José." It must be conceded that if the ambiguity of the description found in the deed is removed by the language of the documents referred to therein, the contention of the appellant is sound; for the grant, the confirmation, and the survey are as much a part of the deed as if they had been fully set forth therein. It becomes necessary, therefore, for us to look at these documents.

In their original petition to the governor, Palomares and Vejar asked him to grant the place known by the name of San Sosé, distant some six leagues from the exmission of San Gabriel. The committee on vacant land reported favorably, and on April 15, 1837, they were declared to be the owners " of the place called San José," and juridical possession of the " place or rancho called San José " was given August 14, 1837. The three

grantees were declared to be "the owners in property of the said place called San José, with the addition of one league." Again, the governor, in directing the issuance of title to the property, stated: "Ygnacio Palomares, Ricardo Vejar, and Luis Arenas are declared owners in property of one league (*de ganado major*) *as an augmentation to the place called San José,* which was adjudicated to the two first named. Let the title in property of the *said place, with the augmentation referred to,* be again issued in favor of the three individuals mentioned." The decree of confirmation to Vejar states that "the land of which confirmation is hereby made is a portion of the place called San José, . . . . and is bounded and described as follows, according to the map or diagram of the same annexed to the testimonial, showing a partition of the place called San José, between Ygnacio Palomares, Henry Dalton, and Ricardo Vejar"; and in his certificate the secretary of the board certified that the transcript of the record contained a copy of the evidence on file in case No. 338, wherein Vejar is a claimant against the United States for "the place known as San José." In their opinion in *Dalton* v. *United States,* the board of land commissioners state that the claimant has presented two grants: 1. One in which the property granted is designated by the name of San José; 2. A grant made to Palomares, Vejar, and Arenas, dated March 14, 1840, which grant covers the land conceded by the first grant, "together with one square league more of land, *in addition to the former grant.*" In some of the proceedings the additional league granted to the three grantees named is called "Azusa." There is in the record a map compiled by Thompson, in 1877, from maps and exhibits on file in the office of the United States surveyor-general, which purports to give the boundaries of the "Rancho San José," "Rancho Azusa," and "addition to Rancho San José," as fixed by United States deputy surveyors. In the proceedings for the confirmation before the board of land commissioners, the entire tract is uniformly referred to as the Rancho

San José. The only evidence we have of the district court decree is in the recitals of the patent, a copy of which is set forth in the transcript. These recitals refer to the petitions for confirmation, the basis thereof, the action of the land commissioners, with a description of the land, the appeal to the district court, and the decree of the latter that the decision of the board be affirmed, the further adjudication by said court that the petitioner was entitled to an equal undivided third part of the lands granted by the governor on April 15, 1837, and regranted in March, 1840; and the patent closes with a grant to the three owners and their heirs of the tract of land known by the name of "addition to San José"; but this patent was issued on the fourth day of December, 1875, and we have been unable to find such a designation of the place anywhere in the proceedings, from the inception of the title down to the issuance of the patent.

Now, what is meant by the terms "addition to Rancho San José" and "augmentation to the place called San José"? The term "augmentation" is defined to mean "the act of increasing or making larger by addition, expansion, or dilation; the act of adding to or enlarging; the state or condition of being made larger." (Century Dict.) · A thing increased is the same thing made larger; and in speaking of the territory which augmented the San José Rancho, no simpler language could have been used than "addition to the Rancho San José," and thus it is designated by the United States surveyors in their maps. Appellants contend it is shown that the "league in augmentation" did not become a portion of the Rancho San José as understood by the Mexican government, because after the "league in augmentation" of the grant of the "Rancho San José" had been made to the three grantees, and juridical possession given to them of it under the name of "Azusa," a grant was made to Arenas personally of another league, which used the language in "augmentation of the place called Azusa," which latter place was owned by the three; that no one

would for a moment suppose the personal grant to Arenas was the same grant that was made to the three, or a portion of the same, simply because spoken of as being "in augmentation" of it. But here appellants' counsel goes beyond the bounds of legitimate argument upon the question under consideration, which is confined to a discussion of the effect of the three documents above referred to in construing the meaning of the term "rancho of San José," as used in the deed. If the subsequent grant to Arenas can be used in determining the question as to what Vejar intended to convey, it must be conceded that the ruling of the court in receiving other evidence *dehors* the deed was correct. It was proper for the court to consider this point now made by appellant, in determining, upon all the evidence, — the deed, the three documents referred to, and the evidence received *dehors* the record, — what Vejar intended to convey by his deed of the Rancho San Jose, and we presume it was considered in that connection.

Appellant also claims that a conclusive reason why the two tracts " were not and cannot be treated as all a part of one grant is, that the original grant of 1837 of the place called San José was a complete and perfect grant under the Mexican law, and thereby the entire title of the government in such land had become extinguished, and therefore as to such tract of land no title whatever passed by the regrant of 1840, in connection with the grant of the additional league." It is doubtless true, as a matter of law, that the original grant to Palomares and Vejar, the confirmation by the departmental assembly, and the juridical possession which was given prior to the making of the grant of 1840, made the grant a perfect one, and no additional title was acquired by Palomares and Vejar to the land therein included; but the question is not as to the legal effect of the original grant, but as to what lands Vejar intended to include within the language used in his deed of April 30, 1864, viz., " known, called, and described as the Rancho San

José."   A rancho made up of several grants may acquire
a name, and pass by a deed under the same.

We do not think that a reference to the documents
referred to in the deed removes the ambiguity of the
description of the contract.   The court did not err,
therefore, in admitting extrinsic evidence, and we pass
to a consideration of the question whether such evidence
supports the finding of the court.

The names " place called San José," " Rancho San
José," " place called Azusa," and " Rancho Azusa " are
used very indefinitely in the proceedings.   The board
of land commissioners, in *Dalton* v. *United States*, re-
ferring to the two grants, say that neither of them
designates " the land granted by the name of Azusa, and
that name seems to have been applied to the place occu-
pied first by Arenas, and then by Dalton, his grantee,
and to have comprised both the portion of San José
and the additional league of land which was covered by
the grant made to said Arenas alone."   The defendants
read in evidence a lease made by Vejar to Tischler and
Schlesinger, dated April 19, 1861 (three years prior to
the execution of the conveyance to them), in which he
described the property as the " Rancho San José, being
the same that was granted to the party of the first part,
Ygnacio Palomares, and to Luis Arenas, by Governor
Alvarado, March 14, 1840, and confirmed by decree of
the United States district court for the southern dis-
trict of California, February 25, 1856."   As there never
was more than one grant by Governor Alvarado to the
three grantees named, it is certain that Vejar, in this
description, included the property in controversy here,
— the addition to the Rancho San José.   On August 19,
1861, Vejar and wife executed and delivered to Tischler
and Schlesinger a mortgage upon " that certain tract of
land known as the rancho of San José, being the same
that was originally granted by Juan B. Alvarado, governor
of California, to Ricardo Vejar, one of the parties of the
first part, and Ygnacio Palomares on the fifteenth day
of April, A. D. 1837, . . . . and which was regranted

by the said Governor Alvarado to said Vejar, Polomares, and one Luis Arenas on the fourteenth day of March, A. D. 1840, together with an addition of one league of land on the west, . . . . and being the same land which was confirmed to Ricardo Vejar by decree of the United States district court for the southern district of California on February 25, 1856." These two instruments we think show very clearly that Vejar understood that all the land in controversy was included within the Rancho San José. In their petition to the judge and first alcalde, Vejar and Dalton represented themselves as owners of the " Rancho San José," and said " that the property in said rancho being in three individual shares, one of which belongs to Don Ygnacio Palomares, and it being for the interest of those which we represent to make a partition of the lands *of said rancho,*" they hope an order will be made to partition the same. The partition prayed for, however, was for the whole place, including the additional league. Palomares was notified that such an application had been made, and " when informed of its contents, said that he was not opposed to the partition of the rancho of San José, as a joint owner, he receiving the part which might belong to him," but was opposed to paying his share of the expenses, " on account of having already made greater payments in patenting the said rancho." The judge referred to the land to be partitioned as the " Rancho San José," and speaking of his proceedings, said that Vejar and Dalton " were satisfied with their portions as the third part of the rancho of San José, and remained in possession thereof," but Palomares " rudely and disrespectfully went away, saying that he would not agree to it."

One Francisco Alvarado testified on behalf of the defendant that he had known the Rancho San José ever since and before it was granted by the Mexican government; that Palomares was his uncle; that the two tracts of land were always considered as one ranch; that after the grant of the additional league, they considered the ranch so much larger, and he never heard his uncle

speak of the addition as being a separate ranch, but only that the ranch was larger.   Ygnacio Alvarado testified that he was acquainted with the lands prior to 1837; that he lived on the Rancho San José in 1865, and for many years prior thereto; that he never knew of any other ranch than the Rancho San José.   W. R. Rowland testified that he had a conversation with Vejar subsequent to his conveyance to Tischler and Schlesinger, and while he lived on the Puente ranch, and that in said conversation Vejar stated that he had no other lands, and wanted to remain there during his lifetime, and the witness gave him permission to do so.   J. M. Fears testified that he had known the San José ranch for about twenty-five years, and had just recently heard of the San José addition, — in the last year or two.   Louis Phillips testified that Vejar died in 1880 or 1881; that no administration on the estate of Vejar was ever had; that Vejar left the San José rancho in 1864, after his conveyance to T. and S.; that he never heard Vejar speak of the San José addition; that neither Dalton nor Palomares, both of whom showed him the boundaries of the lands which they claimed under the whole partition, ever said anything to him about the San José addition.   M. F. Coronel testified that he knew Vejar and Palomares in their lifetime, and the San José ranch on which they resided; "that the San José ranch included where Vejar and Palomares lived, and the additional league; that it was all called Rancho San José, but it had different names,— San José de Palomares, and San José de Penascoso, and San José de Vejar "; that the first he knew of the San José addition was when Dalton informed him about it.

It is impossible to believe that Vejar, in his straitened circumstances from 1864 down to the time of his death, would have remained away from the lands in controversy, under the circumstances, if he had believed that he still retained an interest therein.   He had several children, but none of them ever attempted to take possession of the land, or, so far as the record shows, to claim any interest therein.   Vejar was claiming land in the Nogales

and Puente ranch, and when the decision in the contro-
versy went against him, he begged permission of Row-
land to remain on the premises he had so long occupied,
and stated that he wanted to remain there during his
lifetime, because he had no other lands.    The conduct
of the parties subsequent to the making of a deed is
competent, and often very material, evidence in deter-
mining, in case of an ambiguity, what was intended to
be conveyed.    (*Mulford* v. *Le Franc,* 26 Cal. 88.)    Upon
all the evidence in the case, we fail to see how the court
could have found in accordance with the contention of
the appellant.

It remains to be considered whether the claimants
under Palomares — some of whom are plaintiffs and
some defendants, and all are appellants — have been
divested of their interest in the San José addition, as
heirs of Ygnacio Palomares, one of the three original
grantees.    The court below, in its opinion, a copy of
which is printed in the briefs, did not consider this
question.    Whether it was deemed conceded by appel-
lants, or whether it appeared too clear for argument
that there was no merit in their claim, does not appear.
But the fact is that the court found against their con-
tention.    The evidence, however, on this branch of the
case is not so clear and convincing as it is with respect
to the claim of other appellants.    Ygnacio Palomares
died in 1864, and left a will in which he devised to his
wife " the land of the rancho," excepting therefrom cer-
tain portions.    The will was duly admitted to probate.
The inventory, properly authenticated, described the
real estate as 3,335 acres " of the rancho de San José."
No other reference is made to the Rancho San José, nor
does the name " Rancho San José Addition " appear
anywhere in the proceedings.    The final decree was en-
tered in the matter of the estate, distributing the prop-
erty under the same description, viz., 3,335 acres in the
Rancho San José, and also any other property to the
widow, whether then known or not known.    It is claimed
by appellants herein that no part of the addition to the

Rancho San José passed by said will and the proceedings had thereon. This contention cannot be sustained. The will refers to the " rancho," — a general term for the land held and occupied by him,— and which he desired his wife to take; and the evidence quoted above shows that he understood that he had an interest in but one rancho, viz., the San José; that the latter included whatever interest he had in the San José addition.

Appellant insists that the construction which we have placed above upon the term " San José addition " cannot be applied to instruments which were executed and delivered after the issuance of the patent to the San José addition in December, 1875. It is claimed, therefore, that the deed of the widow, Concepcion Palomares, of October, 1877, by which she conveyed to Francisco Palomares all her right, title, and interest in and to " the rancho de San José," cannot be held to have included in the tract conveyed the " San José addition."

The determination of this contention again depends upon the solution of the question as to what the grantor — the widow — meant and intended to convey by the use of the description employed in the deed. It is true, her conveyance was executed two years after the patents had issued for separate tracts, one under the name of " San José " and the other under the name of " San José addition." But we cannot agree with counsel for appellants in saying that both tracts " were then well known by said respective names." The evidence, we think, fails to show this, and sufficiently establishes the conclusion of the court that the grantor intended to convey, not only her interest in the San José rancho, but in the addition thereto. Francisco Alvarado, a nephew of Ygnacio Palomares, testified that after the grant of the additional league, it was always considered as one ranch; that his uncle never spoke of it as a separate ranch, and that he never heard that the league was a separate ranch until he came into this case. Ygnacio Palomares never heard about what is called the addition or augmentation until two or three years

before the trial. Mr. Rowland, who has lived on an adjoining ranch since 1846, never heard of the San José addition until after Mr. Slausson had commenced suit for partition in 1881 or 1882. The witness Fears stated that he had heard of the San José addition, — just heard it spoken of, — that there was such a thing, — within a year or two before the trial. The only evidence offered in rebuttal of this testimony were certain deeds and agreements between Dalton and others, and to which neither Mrs. Palomares nor her son Francisco were parties, and the testimony of the witness King, tending merely to show that *Dalton* always treated the San José as one tract and the San José addition as another.

Judgment and order are affirmed.

HARRISON, J., and GAROUTTE, J., concurred.